### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.  KASIE DEAN,      )<br>                              )<br>       Plaintiff,       )<br>                              )<br>v.                          )<br>                              )<br>1.  THE CITY OF TULSA,  )<br>                              )<br>       Defendant.     )  | Case No. 19-cv-00651-GKF-FHM<br><br>*Jury Trial Demanded*<br><br>*Attorney Lien Claimed* |

### COMPLAINT

**COMES NOW** Kasie Dean, Plaintiff in the above-entitled action, by and through her attorneys, David R. Keesling and Timothy S. Kittle, of the law firm, DUNLAP BENNETT & LUDWIG, and for her causes of action alleges as follows:

#### JURISDICTION, VENUE, PARTIES

1. Jurisdiction in this matter is based upon the existence of a federal question under 28 U.S.C.A. § 1331 and 28 U.S.C.A. § 1343(a)(4), pursuant to claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e *et seq*.

2. Venue is appropriate as all incidents alleged herein occurred within the Northern District of Oklahoma.

3. Plaintiff Kasie Dean, at all times relevant to the claims alleged herein, was and is a citizen of the State of Oklahoma and a resident of Tulsa County, Oklahoma.

4. Plaintiff Kasie Dean, at all times relevant to the claims alleged herein, was an employee of Defendant City of Tulsa, as defined by 42 U.S.C.A. § 2000e(f).

5. Defendant City of Tulsa ("City"), at all times relevant to the claims alleged herein, was and is an incorporated municipality governed by charter within the State of Oklahoma.

6. Defendant City of Tulsa, at all times relevant to the claims alleged herein, upon information and belief, was and is an employer amenable to lawsuit, as defined under 42 U.S.C.A. § 2000e(b).

7. Due to the foregoing, this Court has jurisdiction over the parties and subject matter.

## STATEMENT OF THE FACTS

8. Plaintiff Kasie Dean incorporates paragraphs 1 through 7 herein as if fully set forth verbatim.

9. Plaintiff was and is a member of a recognized protected class, female.

10. Plaintiff began her employment with Defendant City of Tulsa, in a temporary position, on or about February 2017.

11. On or about March 20, 2017, Plaintiff obtained a permanent position with Defendant in the position of Office Assistant III.

12. On or about May 24, 2017, Janet Hildy ("Hildy"), Plaintiff's supervisor, sent Plaintiff out with a "Vactor" cleaning crew in order to deepen Plaintiff's knowledge regarding her position.

13. Plaintiff was assigned to work alongside other City of Tulsa employees Sean Adams ("Adams"), Roberto Long ("Long"), and their direct supervisor, Josh Drybread ("Drybread").

14. To Plaintiff's knowledge at that time, nothing unusual or improper occurred during that workday.

15. On or about May 31, 2017, Plaintiff was contacted by Long.

16. Long informed Plaintiff that he (Long) had just spoken with Defendant's Human Resources Department regarding the May 24, 2017 shift in which the following was alleged:

   a. Drybread asked Adams if he had fun with his "girlfriend," referring to Plaintiff;

   b. Adams stated that Plaintiff was not his girlfriend but was Long's girlfriend;

   c. Drybread asked Long if Adams' assertion was true;

   d. Long falsely stated the assertion was true and that Long and Plaintiff exchanged sexually explicit photos every night.

17. In response to Long providing this information, Plaintiff, in disbelief and offense, asked Long his reason for making such a false and demeaning allegation.

18. In response to Plaintiff's question, Long stated that he was merely joking with his male co-workers, because "that's just how guys talk sometimes."

19. Long neglected to inform Plaintiff that, in fact, he had been ***twice*** interviewed by Human Resources Analyst II, Dorie Ensinia ("Ensinia"), about the alleged incident.

20. Ensinia's interviews were conducted as a result of an anonymous complaint lodged with the City of Tulsa's "Ethics Hotline" by a female named "Sue," who had overheard the above-named males conversing and reported what she had heard to Plaintiff's supervisor, Hildy.

21. Long originally denied to Ensinia that any nude photographs were ever sent to him by Plaintiff.

22. However, in a second interview of Long by Ensinia, Long alleged that Plaintiff had sent him two "Snapchat" photos depicting Plaintiff lying on a bed wearing only underwear and a small top that "would not be legal to wear in public."

23. Long did state to Ensimia he had never shown the alleged photos to anyone.

24. The alleged photographs were never produced and are only alleged to have existed by Roberto Long.

25. Long conceded to Ensinia that the complaint arose from another overhearing jokes uttered in the workplace between Long and Adams about Plaintiff (who was not present).

26. On May 31, 2017, Plaintiff reported to work, as scheduled.

27. Upon arriving, Plaintiff was immediately sent to Human Resources to speak with Ensinia.

28. Ensinia asked Plaintiff a number of questions about Plaintiff and Long.

29. When asked, Plaintiff pointedly denied sending any photographs to Long.

30. Plaintiff also denied that she and Long had engaged in any relationship besides that of co-employees, meaning Plaintiff and Long did not have a dating relationship of any kind.

31. Further, Plaintiff informed Ensinias of the conversation Plaintiff had with Long on that same day, as alleged above in Paragraph Nos. 15 – 18.

32. After the meeting with Ensinia, Plaintiff completed her workday, which also constituted her "Friday," *i.e.* her last workday for that week.

33. Plaintiff was scheduled to return to work on June 4, 2017.

34. However, on June 1, 2017, Hildy called Plaintiff, while Plaintiff was en route to Arkansas, and instructed Plaintiff to report to work the next day, on June 2, 2017, for a mandatory meeting.

35. Plaintiff reported to work as directed on June 2, 2017.

36. Upon arriving at work, Plaintiff was taken to a conference room where she met with Hildy and Hildy's supervisor, Debra Carr.

37. Carr perfunctorily advised Plaintiff that her (Plaintiff's) services were no longer needed by Defendant City of Tulsa, effective immediately.

38. When queried by Plaintiff as to the reason for the discharge, Carr simply stated, "It's just not working out."

39. Plaintiff then asked whether the decision to end her employment was the result of the complaint about her male co-workers making sex-based jokes pertaining to Plaintiff while she was not present.

40. Carr did not offer a reply to Plaintiff's question.

41. At the completion of the meeting, Plaintiff was greeted by a co-worker who had already boxed up Plaintiff's belongings in anticipation of Plaintiff's separation.

42. Subsequent to the termination meeting, Plaintiff called the "Ethics Hotline" to complain.

43. Plaintiff specifically stated to the "Ethics Hotline" that she was not a participant in the joking, inasmuch as she was not present and cognizant of the sex-based joking – about Plaintiff – that was exchanged by Plaintiff's male co-workers.

44. Notwithstanding her complaint to Defendants' "Ethics Hotline," Plaintiff's discharge was not rescinded.

45. The male employees who created the complaint with their sex-based joking at Plaintiff's expense were not similarly subjected to termination.

46. Upon information and belief, one or more of the male co-workers named herein were originally subjected to disciplinary actions short of termination, but Defendant City ultimately set aside even those impositions of discipline.

47. Thus, subsequent to complaining about the imposition of an adverse employment action, termination of employment (for actions by her co-workers that used her as the object of sex-based, offensive comments), Plaintiff was subjected to retaliation through Defendant City refusing to set aside the discriminatory termination.

48. Defendant City attempted to justify its unlawful actions against Plaintiff due to Plaintiff's status as a "probationary" employee.

49. Defendant City's "reason" for Plaintiff's discharge was pretextual.

50. Plaintiff submitted her complaint in the form of a Uniform Intake Questionnaire to the Oklahoma City Area Office of the Equal Employment Opportunity Commission ("EEOC"), by and through counsel, on or about June 9, 2017, via certified mail.

51. Plaintiff's complaint was received at the Oklahoma City Area Office on or about June 12, 2017.

52. Plaintiff executed her Charge of Discrimination on November 7, 2017.

53. EEOC issued its "Dismissal and Notice of Rights," or "Right to Sue Letter," on September 9, 2019, which was received by Plaintiff's counsel on September 11, 2019.

54. Consequently, this Complaint is being filed within ninety (90) days of receipt of the "Right to Sue Letter," in conformity with the applicable statute.

**FIRST CAUSE OF ACTION**
**UNLAWFUL DISCRIMINATION / DISPARATE TREATMENT**
**TITLE VII, 42 U.S.C. §§ 2000e *et seq.***
**AS TO DEFENDANT CITY OF TULSA**

55. Plaintiff Kasie Dean incorporates paragraphs 1 through 54 herein as if fully set forth verbatim.

56. Plaintiff was an employee of Defendant City of Tulsa.

57. Plaintiff was and is part of a recognized protected class, female.

58. Plaintiff was the object of offensive and sex-based jokes among her male co-workers in her workplace.

59. Plaintiff was subjected to an adverse employment action by Defendant City of Tulsa arising from the incident involving the offensive and sex-based jokes among her male co-workers.

60. The offending male employees were not subjected to the same adverse employment actions as Plaintiff.

61. Thus, Plaintiff was treated differently and less favorably than similarly situated employees who are not in Plaintiff's protected class.

62. The dissimilar treatment on the part of Defendant City of Tulsa was motivated by Plaintiff's membership in her protected class, female.

63. As a result of the actions constituting unlawful disparate treatment because of Plaintiff's sex, female, Plaintiff's rights were violated, causing her injury.

**SECOND CAUSE OF ACTION**
**UNLAWFUL DISCRIMINATION / RETALIATION**
**TITLE VII, 42 U.S.C.A. § 2000e-3(a)**
**AS TO DEFENDANT CITY OF TULSA**

64. Plaintiff Kasie Dean incorporates paragraphs 1 through 63 herein as if fully set forth verbatim.

65. Plaintiff was an employee of Defendant City of Tulsa.

66. Plaintiff was and is part of a recognized protected class, female.

67. Plaintiff was the object of offensive and sex-based jokes among her male co-workers in her workplace.

68. Plaintiff engaged in protected activity, *i.e.*, complained of the disparate and less favorable treatment Plaintiff received through the actions of Defendant City of Tulsa in that

Plaintiff's adverse employment action was sustained while the actual, offending male employees were neither discharged nor disciplined.

69. Defendant City of Tulsa maintained Plaintiff's discharge subsequent to Plaintiff complaining about the discharge.

70. As a result of the actions constituting unlawful disparate treatment because of Plaintiff's sex, female, Plaintiff's rights were violated, causing her injury.

## PUNITIVE AND EXEMPLARY DAMAGES

71. Plaintiff Kasie Dean incorporates paragraphs 1 through 70 herein as if fully set forth verbatim.

72. The acts and omissions by Defendant City of Tulsa, as set forth in the preceding paragraphs, demonstrate that Defendant was engaged in conduct evincing malice or reckless indifference to Plaintiff's rights.

73. As a direct result of Defendant City of Tulsa's malice and /or reckless disregard for Plaintiff's rights, Plaintiff is entitled to exemplary and punitive damages in an amount to be determined by a jury commensurate with the financial resources available to Defendant and sufficient to deter others similarly situated from like behavior, subject to applicable statutory caps.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Kasie Dean prays this Court will grant to her the following relief:

A. Judgment against Defendant City of Tulsa in excess of Seventy-Five Thousand Dollars ($75,000.00);

B. Punitive damages against Defendant City of Tulsa where permitted by law;

C. Order Defendant City of Tulsa to pay the attorney fees, costs, and accruing interest incurred by Plaintiff in prosecuting this matter;

D. Any other such further relief this Court deems just and proper.

Respectfully submitted,

**DUNLAP BENNETT & LUDWIG**

/s/ David R. Keesling
David R. Keesling, OBA No. 17881
Timothy S. Kittle, OBA No. 21979
6660 South Sheridan Road, Suite 250
Tulsa, Oklahoma 74137
(918) 998-9350 – Telephone
(918) 998-9360 – Facsimile
dkeesling@dbllawyers.com
tkittle@dbllawyers.com
*Attorneys for Plaintiff:*
*Kasie Dean*